UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDDIE SPICER,<br>    *Plaintiff*,<br><br>    v.<br><br>CAPITAL ONE, NA/CAPITAL ONE AUTO FINANCE,<br>ANDREW YOUNG,<br>JOHN DOE, AND<br>KARINA DOE<br>    *Defendants.* | No. 3:23-cv-01141 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Eddie Spicer ("Plaintiff") has sued Capital One, NA/Capital One Auto Finance ("Capital One"), Andrew Young, Chief Financial Officer of Capital One, and unnamed Capital One employees John and Karina Doe (collectively, "Defendants"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and Fair Credit Reporting Act ("FCRA"). Compl., ECF No. 1 (August 28, 2023) ("Compl.").

Defendants Capital One and Mr. Young have filed a motion to dismiss Mr. Spicer's Complaint. Mot. To Dismiss, ECF No. 10 (Sept. 21, 2023) ("Mot.").

Mr. Spicer has filed a motion for leave to amend with an attached proposed Amended Complaint. Mot. for Leave to Amend, ECF No. 17 (May 16, 2024) ("Mot. for Leave"); Proposed Amended Compl., ECF No. 17-1 (May 16, 2024) ("Proposed Amend. Compl.").

For the following reasons, Defendant's Motion to Dismiss is **GRANTED**; and

Mr. Spicer's motion for leave to amend with the proposed Amended Complaint is **DENIED.**

I.      FACTUAL AND PROCEDURAL BACKGROUND

   A. Factual Allegations

Mr. Spicer allegedly incurred a debt to Capital One on October 27, 2022. Compl. ¶ 6b.[1] Debt came from services provided by Capital One "which were primarily for family, personal or household purposes." *Id.* ¶ 7b.

From January to April 2023, Mr. Spicer allegedly sent three letters through certified mail—one addressed to Mr. Young and two addressed to Capital One—requesting "verification" of this debt, *id.* ¶ 10, and that Capital One "cease communication with him regarding the debt," *id.* ¶ 11. *See id.* ¶¶ 8, 10, 11, 13.

Mr. Spicer allegedly did not receive a response to any of his letters to Capital One or Mr. Young. *Id.* ¶¶ 9, 12. Throughout this time, Capital One allegedly continued to attempt to collect on the debts allegedly owed by Mr. Spicer. *Id.* ¶ 12.

On May 23, 2023, Mr. Spicer allegedly spoke on the phone to an unnamed Defendant, Karina Doe. *Id.* ¶ 14. Mr. Spicer alleges that she stated his letters had been received and that she would respond to his requests for verification. *Id.* ¶¶ 14, 15.

From April to July 2023, Capital One allegedly reported "negative information" regarding Mr. Spicer's debt, allegedly causing his credit score to drop 200 points. *Id.* ¶¶ 18, 19; *see also id.* ¶ 16.

On July 10, 2023, Capital One allegedly sent a letter to Mr. Spicer notifying him that his account was in default and stating that his vehicle would be repossessed if he did not pay

---

[1] The complaint includes two paragraphs labeled "6" and two paragraphs labelled "7". For clarity, this ruling refers to the second paragraph 6 and the second paragraph 7 as paragraphs 6b and 7b respectively.

$2,691.48 by July 22, 2023, in addition to the $887 payment already due on July 11, 2023. *Id.* ¶¶ 20, 21 & fig. at p.4.[2]

### B. Procedural History

On August 28, 2023, Mr. Spice filed a *pro se* Complaint against Capital One, Mr. Young, John Doe, and Karina Doe. Compl., as well as a motion for preliminary injunction, requesting that Capital One be enjoined from "taking possession of his property." Mot. for Preliminary Injunction, ECF No. 3 (Aug. 28, 2023) ("Mot. for Preliminary Injunction").

On the same day, the Clerk of Court issued an order on pretrial deadlines. Order on Pretrial Deadlines, ECF No. 4 (Aug. 28, 2023) ("Order on Pretrial Deadlines"). Amended Pleadings were due by October 27, 2023; discovery was due to be completed by February 27, 2024; and dispositive motions were due by April 2, 2024. Order on Pretrial Deadlines.

On August 29, 2023, the Court denied Mr. Spicer's motion for preliminary injunction. Order Denying Motion for Preliminary Injunction, ECF No. 8 (August 29, 202).

On September 21, 2023, Capital One and Mr. Young filed a motion to dismiss and an accompanying memorandum of law. Mot. to Dismiss; Memo. in Support of Mot. to Dismiss, ECF No. 11 (Sept. 21, 2023) ("Memo.").

On October 19, 2023, Capital One and Mr. Young filed a notice of non-opposition to its motion to dismiss. Notice of Non-Opposition to Motion to Dismiss, ECF No. 14 (Oct. 19, 2023).

On April 2, 2024, Mr. Spicer filed a motion for extension of time by forty-five days to respond to Defendant's motion to dismiss and first notice of non-opposition. Mot. for Extension of Time, ECF No. 15 (April 2, 2024). This motion was granted, *nunc pro tunc*, on April 3, 2024. Order Granting Motion for Extension of Time, ECF No. 16 (April 3, 2024).

---

[2] Mr. Spicer's complaint includes of photo of this letter and a photo of his account balances.

3

On May 16, 2024, Mr. Spicer filed a motion for leave to amend his Complaint and a proposed Amended Complaint. Mot. for Leave; Proposed Amend. Compl.

On May 30, 2024, Capital One filed a second notice of non-opposition to its motion to dismiss. Second Notice of Plaintiff's Non-Opposition to Motion to Dismiss, ECF No. 18 (May 30, 2024) ("Second Notice").

## II.   STANDARD OF REVIEW

### A.   Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

Complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

### B. Motion for Leave to Amend Complaint

Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within twenty-one days of service or twenty-one days after service of

a required responsive pleading or motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended complaint. Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id.*

The decision to grant leave to amend under Fed. R. Civ. P. 15 is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)").

When a court has issued a Rule 16(b)(1) "scheduling order setting a date after which no amendment will be permitted," the standard for amended pleadings is "governed by Rules 15 and 16 of the Federal Rules of Civil Procedure." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied* 142 S. Ct. 1112 (2022); *see Grochowski v. Phoenix Construction*, 318 F.3d 80, 86 (2d Cir. 2003) ("Where a scheduling order has been entered, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b)."). Once the deadline in a scheduling order for submitting an amended complaint has passed, the Plaintiff must show "the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)" for leave to amend. *Sacerdote*, 9 F.4th at 115; *see also* D. Conn. L. Civ. R. 16 (requiring a showing of "good cause" to modify a scheduling order).

"While the party seeking to amend its pleading must explain any delay, the party opposing the amendment 'bears the burden of showing prejudice, bad faith, and futility of the amendment.'" *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 766 (S.D.N.Y. 2018) (quoting *Grant v. Citibank* (S.D.), N.A., No. 10 Civ. 2955 (KNF), 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010)).

## III. DISCUSSION

In their motion to dismiss, Defendants first argue that Mr. Spicer failed to state a claim under the FDCPA because they are not "debt collectors" within the meaning of the act. Memo. at 4. Defendants then argue that, to the extent Mr. Spicer has concerns with his credit report, he has failed to state a claim under the FCRA. Memo at 6. Finally, in their Second Notice of Non-Opposition, Defendants argue that Mr. Spicer should be denied leave to amend. Second Notice at 2.

The Court will address each argument in turn.

### A. The Fair Debt Collection Practices Act Claims

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors" 15 U.S.C. § 1692(e). The Act targets "abusive, decide, and unfair debt collection practices" that can "contribute to the number of personal bankruptcies, to marital instability, or the loss of jobs, and or invasions of individual privacy." *Id.*

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" 15 U.S.C. § 1692e, or "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f. The statute also imposes duties on the debt collector: The debt collector must provide information on "the amount of debt" and the "name of the creditor to whom the debt is owed" to the consumer

within five days of the initial communication regarding the debt. *Id.* §§ 1692g(a)(1–2). If a consumer disputes a debt in writing within thirty days of receiving notice of the debt from the collector, the debt collector must "cease collection of the debt, or any disputed portion thereof until the debt collector obtains verification of the debt." *Id*. § 1692g(b). Additionally, "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." *Id.* § 1692c(c).

Mr. Spicer alleges Capital One and Mr. Young violated sections 1692c, 1692e, 1692f, and 1692g of the FDCPA.

Capital One and Mr. Young argue that Mr. Spicer's claims under the FDCPA must be dismissed because they are not a "debt collectors" under the statute. Memo. at 4. Additionally, they argue, the factual allegations set forth by Mr. Spicer show that Capital One "*is not and cannot be* a 'debt collector' under the FDCPA." *Id.* (emphasis in original).

Mr. Spicer did not respond.

The Court agrees with the Defendants.

To be subject to the FDCPA, an entity or person must be a "debt collector" who collects or attempts to collect debts owed to another entity. *See* 15 U.S.C. § 1962a(6) ("The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another[.]"). "The FDCPA establishes two alternative predicates for 'debt collector' status— engaging in such activity as the 'principal purpose' of the entity's business and 'regularly'

engaging in such activity." *Goldstein v. Hutton, et al.*, 374 F.3d. 56, 61 (2d Cir. 2004) (citing 15 U.S.C. § 1962a(6)).

Generally, creditors—entities who collect on debts they themselves issued—are not subject to the FDCPA. *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232, 235 (2d Cir. 1998); *see also Daros v. Chase Manhattan Bank*, 19 Fed. App. 26, 27 (2d Cir. 2001) ("The FDCPA excludes entities attempting to collect debts owing to them from the definition of debt collector[.]"); 15 USC § 1692a(6) ("The term [debt collector] does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person").

A creditor can be subject to the FDCPA, however, when the creditor is collecting debts owed to itself and "uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C § 1692a(6); *see also Maguire*, 147 F.3d at 235 ("A creditor uses a name other than its own when it . . . pretends to be someone else or uses a pseudonym or alias." (internal citations and quotations omitted)).

### 1. Claims as to Capital One

Here, Mr. Spicer states that "a financial obligation was allegedly incurred to [Defendant Capital One] (the "Creditor") by EDDIE SPICER© [sic]." Compl. ¶ 6b. He then describes instances of Capital One attempting to collect on the debt it issued. *See id.* ¶ 17 ("d. CAP did not discontinue collection of the disputed debt"); *see also id.* figs. at pp.4, 5 (showing an image of a letter from Capital One notifying Mr. Spicer of payments due and an image of Mr. Spicer's accounts with Capital One). Capital One thus cannot be a debt collector subject to the FDCPA, as Mr. Spicer only alleges that it was collecting its own debts. *See Burns v. Bank of America*, 655 F.Supp.2d 240, 254 (S.D.N.Y. 2008) ("Bank of America is not liable under the FDCPA because

it is clearly not a debt collector; rather, it is the very party to whom the debt is due." (internal citations and quotations omitted)).

Mr. Spicer also does not allege that Capital One is a creditor who should be subject to the FDCPA because it attempted to collect on debts under an alternate name that would suggest to a consumer that the debts were being collected by a third party. *See Burns,* 655 F.Supp.2d at 245 (dismissing a claim alleging FDCPA violations by a creditor when "plaintiffs d[id] not even appear to allege that they 'suffered confusion as to the relationship between Bank of America and Bank of America Mortgage.'" (internal citations and quotations omitted)). Thus, Mr. Spicer has failed to state a claim under the FDCPA against Capital One.

Accordingly, Mr. Spicer's FDCPA claim against Capital One will be dismissed.

### 2. Claims as to Mr. Young, Ms. Doe, and Mr. Doe

Courts in the Second Circuit have consistently held that an individual employee can be liable under the FDCPA when they are debt collectors who "personally engaged in the prohibited conduct." *Isaac v. NRA Group, LLC*, 377 F.Supp.3d 211, 216 (E.D.N.Y. 2019) (internal citation omitted) (collecting cases); *see also Allison v. Whitman & Meyers, LLC*, No. 13-CV-696-JTC, 2015 WL 860757, at * 2 (W.D.N.Y. February 27, 2015) ("Where a plaintiff alleges no specific conduct on the part of an individual defendant, dismissal of the complaint is appropriate."); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 372 (D. Conn. 2012) (holding that individual defendants were not liable when they were not "personally involved in the collection effort" (internal quotations omitted)).  Mr. Spicer's Complaint lacks any allegation that Mr. Young, Ms. Doe, or Mr. Doe were personally involved in the attempts to collect on the debt

owed to Capital One.[3] While he allegedly did speak to Ms. Doe on the phone, he does not allege that she made any collection attempts; only that she stated that she received his requests for verification and would answer them. Compl. ¶ 14, 15.

Accordingly, the claims against the individual Defendants under the FDCPA will be dismissed.

### B. The Fair Credit Reporting Act Claims

"The [FCRA] regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." *Longman v. Wachovia Bank*, 702 F.3d 148, 150 (2d Cir. 2012). The Act applies both to credit reporting agencies and entities who "furnish information to consumer reporting agencies" *Id.* "Section 1681s-2(a) details a furnisher's responsibility to provide accurate information, including a duty to refrain from knowingly reporting inaccurate information, and to correct information discovered to be inaccurate[.]" *Sprague v. Salisbury Bank and Trust Co.*, 969 F.3d 95, 98. (2d Cir. 2020) (*per curiam*) (internal citations omitted). Section 1681s-2(b) requires a furnisher to engage in investigations of disputed credit information when it receives a notification regarding the disputed information from a credit reporting agency. *See* 15 U.S.C. § 1681s-2(b)(1).

When, "construed liberally and interpreted to raise the strongest arguments," *Sykes,* 723 F.3d, at 403, Mr. Spicer's Complaint might raise claims that Capital One violated the FCRA's provisions on furnishing information to credit reporting agencies. *See, e.g.*, Compl. ¶ 9 (alleging that Capital One sent "unverified and disputed information" to a credit reporting agency).

---

[3] Additionally, even if Mr. Spicer alleged Mr. Young or the unnamed defendants were involved with collection attempts, the FDCPA specifies that "the term [debt collector] does not include . . . any officer or any employee of a creditor while, in the name of the creditor, collect[s] debts for such creditor." 15 USC § 1692a(6)(A).

Capital One argues that Mr. Spicer's potential claims under the FCRA fail as a matter of law. Memo. at 6. First, Capital One argues that Section 1681s-2(a) of the FCRA has no private cause of action. *Id.* at 8. Second, Capital One argues that Mr. Spicer did not plead sufficient facts to support a section 1681s-2(b) claim. *Id.*

The Court agrees.

The Second Circuit has held that there is no private cause of action under Section 1681s-2(a). *Longman*, 702 F.3d at 151 ("[T]he statute plainly restricts enforcement of that provision to federal and state authorities. . . . [T]here is no private cause of action for violations of § 1681s–2(a)."); *Sprague*, 969 F.3d at 98–99 ("[T]he FCRA does not provide a private cause of action for violations of Section 1681s-2(a)."). Thus, to the extent that Mr. Spicer alleges that Capital One reported inaccurate information to a credit reporting agency in violation of Section 1681s-2(a), he cannot pursue this claim in federal court. *See Munroe v. Nationstar Mortgage, LLC*, 207 F. Supp. 3d 232, 237 (E.D.N.Y. 2016) (dismissing a claim alleging violations of Section 1681s-2(a) for lack of a private cause of action); *Drena v. Bank of America*, No. 3:15-cv-00176 (MPS), 2016 WL 730699, at *7 (D. Conn. Feb. 23, 2016) (same).

A furnisher's duties under Section 1681s-2(b) arise only after a consumer has notified a credit reporting agency of disputed debt, and the reporting agency has then notified the furnisher of the consumer's dispute. *See Sprague*, 969 F.3d at 99 ("The statute is clear that the notice triggering [the furnisher's] duties must come from a CRA, not the consumer."); 15 U.S.C. 1681s-2(b)(1) ("After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall . . . conduct an investigation with respect to the disputed information."). Mr. Spicer does not allege that he made any reports to credit reporting agencies

12

regarding the allegedly unverified debts, or that a credit reporting agency notified Capital One of any disputed information. Thus, he fails to state a claim under Section 1681s-2(b) of the FCRA. *See Elmore v. North Folk Bancorporation, Inc.*, 325 F. Supp. 2d 336, 340–41 (S.D.N.Y. 2004) (dismissing a Section 1681s-2(b) claim because plaintiff complained only to the bank, not the credit reporting agency).

Accordingly, any claims that Capital One violated Section 1681s-2(a) or (b) of the FCRA will be dismissed.

### C. Leave to Amend the Complaint

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). Because Mr. Spicer filed his proposed Amended Complaint, well beyond "21 days after service of a motion under Rule 12(b)," *id.*; *see* ECF No. 17 (indicating that Plaintiff filed his motion to leave to amend Complaint on May 16, 2024, several months after the Defendants filed their motion to dismiss on September 21, 2023), Mr. Spicer proposed Amended Complaint cannot be filed as a matter of right.

Instead, he "may amend [his] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Mr. Spicer requests leave to amend his Complaint to add a tort law claim that Defendants invaded his privacy and a claim that Defendants violated the Connecticut Fair Debt Collection

13

Practices Act. Proposed Amend. Compl. ¶¶ 30–42. In their second notice of non-opposition, Defendants argue that Mr. Spicer should not be allowed leave to amend his Complaint because he does not have good cause to do so under Rule 16 of the Federal Rules of Civil Procedure. Second Notice at 2–3.

The Court disagrees with the Defendant's argument, but finds that Mr. Spicer should be denied leave to amend on other grounds.

The order on pretrial deadlines is not a "scheduling order" under Rule 16 that requires the heightened "good cause" standard for pleading amendments. The order states that the parties should adhere to the deadlines within "[u]nless otherwise ordered by the presiding Judge" and contains a reference to an "entry of a scheduling order pursuant to Fed.R.Civ.P. 16(b)" that will occur at a later date. Order on Pretrial Deadlines. Additionally, while a Rule 16(b) scheduling order must be issued by "the district judge[,] or a magistrate judge when authorized by local rule," Fed. R. Civ. P. 16(b)(1), the pretrial deadlines the Defendants point to were issued by the Clerk of Court. Order on Pretrial Deadlines. Because the order on pretrial deadlines is not a "scheduling order setting a date after which no amendment will be permitted," *Sacerdote,* 9 F.4th at 115, the Rule 16 "good cause" standard does not apply.

Instead, the Court will apply the Rule 15 standard and "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, however, Mr. Spicer's proposed amendments should be denied as futile. *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("Leave to amend may properly be denied if the amendment would be futile." (internal citations and quotations omitted)).

Mr. Spicer's proposed Amended Complaint maintains his FDCPA and FCRA allegations, which, as this Court has just determined, fail to state a claim under Rule 12(b)(6), and there is

nothing in the proposed Amended Complaint to remedy the fatal flaws of these claims identified above. In the absence of valid federal law claims, Mr. Spicer would need to assert diversity jurisdiction for the Court to hear his proposed state law claims. *See Durant, et al., v. Dupont* 565 F.3d 56, 62 (2d Cir. 2009) ("It is a fundamental precept that federal courts are courts of limited jurisdiction[.] . . . If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action sua sponte." (internal quotations and citations omitted)).

A district court has subject matter jurisdiction if there is federal question jurisdiction under 28 U.S.C. § 1331, or diversity jurisdiction under 28 U.S.C. § 1332. Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction exists in actions where there is diversity of citizenship and "the matter in controversy exceeds the sum or value of $75,000," 28 U.S.C. § 1332; *see Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000) ("Diversity jurisdiction requires that 'all of the adverse parties in a suit . . . be completely diverse with regard to citizenship.'" (quoting *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998))).

"An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Van Buskirk v. United Group of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) (internal quotation marks and citation omitted). "[E]vidence of residence is insufficient to establish domicile." *Id.* at 54. Domicile requires residency "coupled with the purpose to make the place of residence one's home." *Texas v. Florida*, 306 U.S. 398, 424 (1939); *see also Connolly v. Spielman*, 999 F. Supp. 270, 272 (N.D.N.Y 1998) ("A party may have multiple residences, but only one domicile.").

15

"For diversity purposes, a corporation is considered a citizen of the state in which it is incorporated and the state of its principal place of business." *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012). The principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp v. Friend*, 559 U.S. 77, 92–93 (2010); *see also id.* at 93 ("[I]n practice [the principal place of business] should normally be the place where the corporation maintains its headquarters[.]").

Mr. Spicer's proposed Complaint states that he is "residing in Stratford, Connecticut" and that Capital One is a "business entity in the State of Virginia 1680 Capital One Drive, Mclean, VA 22102-3491." Proposed Amend. Compl. ¶ 3, 4. As to his own citizenship, Mr. Spicer's statement of residency is insufficient for concluding that he is domiciled in, and thus a citizen of Connecticut. See *Ming Li v. Colonial BT, LLC*, No. 3:14-CV-999 (CSH), 2014 WL 3579469, at *5 (D. Conn. July 21, 2014) ("Citizenship, which is generally synonymous with domicile, may not be inferred from residency." (citation omitted)).

For the Defendants, Mr. Spicer's allegations are equally insufficient. First, "business entity in" is not a clear allegation that Capital One has its principal place of business or is incorporated in Virginia. Even assuming that Mr. Spicer is referring to the principal place of business with the Virginia address provided, he would additionally need to provide the state of incorporation because a corporation is citizen in both states. Second, Mr. Spicer includes no allegations as to the citizenship of Mr. Young or the unnamed Defendants. Thus, Mr. Spicer fails to allege that there is complete diversity. See *Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("[A]ll plaintiffs [in actions under diversity jurisdiction] must be citizens of states diverse from those of all defendants.").

Moreover, Mr. Spicer's proposed Complaint does not include allegations of an amount in controversy that meets the statutory minimum. "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Klaneski v. State Farm Mutal Auto Insurance Co.*, 680 F. Supp. 3d 170, 181 (D. Conn. 2023) (quoting *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003)). "In conducting this inquiry, courts in the Second Circuit apply a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* Overcoming this presumption requires a showing "'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d at 397 (quoting *St. Paul Mercury Indem Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938))*; see also Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364-65 (S.D.N.Y. 2019) ("Conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient."). In the absence of a specified amount, "courts examine the nature of the claims, factual allegations within the pleadings, and the record outside the pleadings to determine the amount in controversy." *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 438 (S.D.N.Y. 2006).

Mr. Spicer's proposed Complaint requests an award of "actual damages," damages caused by "emotional distress," and "punitive damages" for his state law claims. Proposed Amend. Compl. at 8. Mr. Spicer also states that he has suffered "humiliation, anger, anxiety, emotional distress, fear, frustration, embarrassment, including legal fees and other expenses incurred, defamation of creditworthiness, shame, pain, [and] scorn from family." *Id.* ¶ 20. He does not specify a requested amount or further elaborate on the damages he incurred. The Amended Complaint contains no allegations as to the total amount of the auto loan taken out

from Capital One, the amount already paid, the amount still owed, or the worth of Mr. Spicer's car purchased with the loan. Mr. Spicer also states that, at the time of filing his motion for leave to amend, he is still in possession of his car. *See id.* ¶ 18 ("To date, no such seizure has taken place.").

Looking to "the record outside" the amended pleading, *Burr ex rel. Burr,* 478 F Supp. at 438, Mr. Spicer's first Complaint includes a document stating that the balance on the loan owed to Capital One is $50,305. Compl., fig. at p.5. Even if Mr. Spicer had alleged that the amount in controversy was the totality of the loan balance—which he does not—this amount would still be below the jurisdictional minimum of $75,000. 28 U.S.C. § 1332 (requiring that "the matter in controversy exceed[ ] the sum or value of $75,000. . . ."). Given the futility of his federal claims, as discussed above, and without a successful pleading of diversity jurisdiction, Mr. Spicer does not meet the burden of demonstrating that the amount in controversy suffices for diversity jurisdiction.[4]

Having already reviewed one Complaint, as well as a proposed second one, the Court sees no reason, based on the substance of Mr. Spicer's two previous filings, to provide a third opportunity to file a valid Complaint in this Court. *See, e.g.*, *Bellikoff v. Eaton Vance Corp.*, 481 F. 3d 110, 118 (2d Cir. 2007) ("Leave to amend is especially inappropriate where, as here,

---

[4] In the absence of federal subject matter jurisdiction over Mr. Spicer's state law claims, as discussed above, this Court does not and cannot foreclose Mr. Spier from seeking to bring his proposed state law claims in a Connecticut court. *See Hernandez v. Conriv Realty Assocs.,* 182 F.3d 121, 123 (2d Cir. 1999) ("Article III's limits on federal jurisdiction are designed not only to prevent federal courts from assessing the merits of certain disputes, but also to prevent federal courts from interfering – through such assessments *or otherwise* – with the jurisdiction of state courts over certain cases, such as this one, that do not implicate federal interests."). Nevertheless, at the very least, his proposed tort claim, one arising out of his contractual relationship with Capital One, faces significant obstacles. *See Ulbrich v. Groth*, 78 A.3d 76, 100 (2013)( [T]he economic loss doctrine bars negligence claims that arise out of and are dependent on breach of contract claims that result only in economic loss.); *id.* (in applying the economic loss doctrine, "courts do not look at whether the Plaintiff has, in fact, pled a claim for breach of contract, but rather they look to whether the tort claims "arise out of and are dependent on breach of contract claims that result only in economic loss.").

plaintiffs' proposed amendments merely recycled versions of claims which had already fallen victim to a motion to dismiss."); *Nicholson v. Bank of New York*, 22-cv-3177 (PGG) (KHP), 2023 WL 5526715, at *9 (S.D.N.Y. Aug. 28, 2023) ("A court may properly deny leave to amend, however, in cases of . . . repeated failure to cure deficiencies . . . ." (citation and internal quotation marks omitted)); *Dash v. Mayers*, 19-cv-414 (GBD)(JLC), 2020 WL 1946303, at *9 (Apr. 23, 2020), *report and recommendation adopted*, 2020 WL 3056133 (S.D.N.Y. June 9, 2020) ("[B]ecause [Plaintiff] has now effectively had two opportunities to amend his complaint and any further attempt would be futile for the various reasons set forth in this Report, he should not be granted leave to further amend his pleadings." (citations omitted)).

Accordingly, the Court thus denies leave to amend, and will dismiss this case.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**; and Plaintiff's motion for leave to amend the Complaint is **DENIED.**[5]

The Clerk of Court is respectfully directed to enter judgment for the Defendants and to close this case.

**SO ORDERED** at New Haven, Connecticut, this 20th day of September, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[5] Consistent with the discussion in footnote 4, although this Court "lack[s] the power to dismiss a case with prejudice where subject matter jurisdiction does not exist . . . in the interest of finality, collateral attacks on subject matter jurisdiction are not permitted." *Hernandez*, 182 F.3d at 123 n.3 (citation omitted). As a result, Mr. Spicer "cannot seek to avoid the res judicata effect of [this] judgment by arguing that the court entering the judgment had lacked subject matter jurisdiction over the case." *Id.*